The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good morning. We'll first call 4-22-1075 Thomas Jessica v. County of Peoria et al. If the appellant for counsel would please state your name for the record. Good morning. Lisa Medor, M-E-A-D-O-R, on behalf of the defendants, County of Peoria, Andrew Rand, and James Fennell. Thank you. And counsel for the appellee. Good morning. My name is Justin Penn, P-E-N-N, and I represent Ms. Thomas. Thank you. Before we proceed, I'll just let you know that Justice Zinoff has had some connectivity problems this morning. Unfortunately, we can't track down just why that is. So, you may at times see her screen freeze up, but with the use of the telephone, she's able to follow and hear everything that's proceeding and going on. So, with that counsel, you may proceed. Thank you. May it please the court. Thank you for your time this morning. Six months ago, the Peoria County voters decided overwhelmingly to eliminate the auditor's office. Eliminate the office. Everyone understands what that means. Terminate, abolish, end. It's common sense. I understand it. You understand it. And the voters of Peoria County certainly understand it. It's understood by everyone except the auditor, apparently. Truth be told, I think she does get it. I think she gets that the referendum puts an immediate end to the auditor's office. But she desperately wants to hold on to an office that's been abolished, and she has sued to usurp the will of the voters that she was elected to represent. Well, let me cut in there and just ask a quick question. What does immediately end mean? So, immediate, if you look to the terms of Section 4C under Article 7 of the Constitution and Section 11B, holds that the Peoria County is constitutionally mandated to adopt a referendum under 4C that eliminates an office as provided. And so what we have at this point is merely the administrative task of implementing the vote. As you all may recall, when the referendum was put on the ballot, Thomas, the auditor, sued the Peoria County Election Commission, claiming that it violated their constitutional rights as voters and sought an injunction to keep the referendum off the ballot all the way through certification of the ballot, claiming that it was biased. But this court declined to find that the referendum was constitutionally improper. The auditor saw the writing on the walls, saw the office was being eliminated. All that was left was this administrative task of implementing the referendum. But rather than respect the will of the voters, in yet another attempt to circumvent the referendum, she sued here in her pending mandamus claim under a constitutional voters' rights action, claiming that... I'm going to ask Justice Kavanaugh's question. We know from Leck v. Michelson that our Supreme Court has said that a referendum that is designed to alter an elected official's term of office must be self-executing. How was this referendum self-executing when it needed action by a county administrator to abolish the office and had no date to do so? Well, Your Honor, the action that... So I would say under Leck and Lipinski, first of all, the provisions are related to a separate constitutional provision that's 6F, related to home rule units of government. Peoria County is not a home rule unit. This referendum is under Section 4C, which is different. And if you look to... Well, let me just interrupt you for a minute. How is it really different? I mean, if you look at F and C, substantively, they really are no different. Because F refers you back to 4C. So while Peoria County is not a home rule entity, it... I mean, the last sentence in F says, A home rule county shall have the power to provide for its officers their manner of selection, terms of office, and the manner set forth in Section 4 of this article, and 4C gives us that. So I'm not sure the distinction is really something that this court needs to focus on. But I know I interrupted you, and I would like to hear the rest of your answer, please. That's okay, obviously. Feel free. So the distinction that I would make is the differentiation between the language may in 4C and shall in 6F, and that under 11B, there's a constitutional mandate to adopt the provision. Now, with regard to... Even if we apply Section 6F to this, the issue that we've presented here, the holdings in Leck and Lipinski are not just that it must stand on its own terms, but that the referendum, any referendum that requires interpretation, supplementation, or modification, in order to implement it, necessarily doesn't stand on its own. Here, we have a referendum that stands on its own because it requires no further supplementation, interpretation, or modification in order to implement it. So I have a question. My question is, why should this issue have ever come up? That is, the persons responsible for getting this referendum on the ballot have the beginning of the referendum saying, shall Peoria County eliminate the office of county auditor when Peoria County... If we pause right there, that's really what's at issue. But then the referendum goes on to add two things that really have nothing to do with that question. But just there's so much, I guess, an argument why the voters might want to do this. Namely, there's already an external auditor, and this would be a cost savings. It would have been a lot better and easier, and shouldn't maybe we require the referendum to say something like, shall Peoria County eliminate the office of the internal office of county auditor? And if this referendum passes, then that office is eliminated immediately. That would have cleared all this up, wouldn't it? Potentially, but I would say, Your Honor, that that's not required. And that the Supreme Court has held that a referendum does not need to be in ideal condition or verbiage in order to be implemented, in order to be constitutionally proper. Now, taking a step back as to whether or not we even view this, we're looking at a case where this is a mandamus action, and the auditor has sought to shoehorn a constitutional claim into a mandamus action, which is not the appropriate vehicle. In fact, by doing so, the auditor is preventing Peoria County from abiding by its obligations to the electorate. And that's the duty here under mandamus. Further, this is a voter's rights action, and the auditor has sued here as an elected official, not as a voter. These are not her rights. The rights belong to the voters themselves. And the voters have not claimed that the referendum was vague, and that they didn't understand it. The voters haven't alleged a violation of their constitutional rights. Well, I would argue, Your Honor, that the referendum itself is not vague, and that the termination, the abolition... No reasonable voter could read this referendum and think it's not going to be effective until the end of the term of the auditor? I would argue that because of the language of the referendum, Your Honor, that it necessarily alters the term of office of an officeholder, because the elimination of an office necessarily does so. And that this is the manner in which referendums throughout Illinois are written, placed on the ballot, voted on, and implemented throughout Illinois. We've provided the court with dozens of examples from this very election in November of similar referendum that do not have an effective date. And that is the standard practice, because it is common sense that it will be implemented according to the election cycle. And it's just a ministerial act in order... It's common sense that if you vote on a referendum to eliminate an office, that the office will be eliminated in midterm and not when the term of the current officeholder expires. Seems to me that that's at least a 50-50 shot for a reasonable voter on this referendum to conclude. Because here we have a situation where this argument is not being put forth by the voters. It's being put forth by the person holding the office who has... When the current term of the officeholder ends, not immediately in the middle of her term. I don't understand how you can say the voters would clearly know that to be the case. The language of the entirety of the referendum identifies that there is the fiscal savings, the annual cost savings to the county for doing so, which provides that that would be the result is that the county would save this amount of money annually. They're not waiting to do so till 2024. And if the intent was so, it could have been written so. I would also then refer you to the Section 11B again, which mandates that the board adopt the referendum that is voted on by under Section 4C. Well, counsel, let me ask this. You're defending the people who pushed this referendum, and it's kind of like insurance companies running their policies. It seems to me you could have written this, the people you're representing, could have written this in a way to avoid precisely the issue of novel forests, placed by, as I mentioned before, saying, by the way, this is effective immediately to determine the office of the current auditor ends upon approval of this referendum. But they didn't do that. And in a sense, this is perhaps deceptive to the voters. Maybe it wouldn't have passed or wouldn't have passed in the same amount as it did. Might have been a difference. And the voters understood. Ms. Thomas is out of office in the middle of her term. Why shouldn't that affect our judgment on how we view all of this? I would refer your honor to the language of 4C, which provides that it may be, it does not make a separate qualification required as the plaintiff claims here to implement and to have an effective date in the language. The question is whether or not it's vague. And we look to the, we can look to the legislative history and what drove the intent behind 4C was to give the electorate the power to eliminate an office unencumbered by whether or not there was an office holder or a term of some, you know, the term of office for that office holder. The electorate has the power to decide. It is no longer fiscally sound to have this office. And that's what the electorate did here in Peoria County. They determined that the fiscal savings was more important than any value of the auditor's office itself. If the language in the statute is clear, there is no need to look to the legislative history. Isn't that correct? And I do think that by suggesting, I'm sorry, but by suggesting that we need to look at the legislative history, are you saying that the language is unclear, is ambiguous? I am not, Your Honor, particularly not in light of Section 11B, which again mandates that the County Board adopt the referendum. We are talking here about merely the administerial act of implementing the referendum. The same thing that is happening with regard to virtually every referendum that is on the ballot throughout Illinois. We look, you know, we pointed out dozens of examples that were on the ballot back in November. There is no constitutional requirement that the date that referendum is, you know, the ministerial implementation of it is required to be in the language of the referendum. The legislature gave the power to the electorate to make that decision without requiring the effective date of a ministerial act. Now, there is a difference as found in Leck and Lipinski under Section 6F of the Constitution where those referendum affect the mechanisms of the election processes. That is a very different vehicle or concept than what we have here. This is just a ministerial application. And again, it stands on its own because it does not require any supplementation, modification, or interpretation in order to implement it. But now, won't the plaintiff here be forced out of her job and unable to perform duties and therefore irreparably harmed if we're looking at some of the other aspects of a preliminary injunction? She wouldn't have an adequate remedy at law either. If the office is abolished, that's correct. The office was abolished. The office was abolished by virtue of an overwhelming vote of the voters on November 8th. They determined that the value of the fiscal savings outweighed her keeping her job. And that's exactly what the legislators intended. They didn't want the voters to be tethered to concerns about whether someone was currently holding the position, what the term of office was for that position. And I would say that we need to understand the reality of the impact of the precedent that would be set if we followed plaintiff's theory. First is that the court would substitute the auditor's judgment for that of the voters without basis. Second is that virtually every referendum on the ballot would be construed as unconstitutionally vague because it doesn't have an effective date. Well, how about this as a thought? Put an effective date in the referenda and then we don't have any more issues, do we? In an ideal world, Your Honor. Well, wouldn't that be the effect of our disagreeing with you? Well, the Constitution doesn't require that. You're talking about the slippery slope and all the problems that would arise if we disagreed with you, but it seems to me that that wouldn't occur at all. The only thing that would occur is drafters of referenda would know putting an effective date, which is what ought to be done anyway, isn't it? In my opinion, it's not required. That's not quite my point. My point is not that it's required, but wouldn't it be a better practice to do that to avoid precisely this issue? It would be an ideal practice, Your Honor. Yes. So if we were to sell whole, then I don't think it would be quite as dramatic a problem as you described. Instead, drafters of referenda in the future would understand, by the way, if we're abolishing offices, let's put a provision in that says if it happens, the effect is immediately or after the term of the office is concluded. That's all that would happen, isn't it? Moving forward, yes, but that's not the constitutional requirement or the precedential requirement for this referendum here. And lacking, as we've established through the case law we've presented, lacking an effective date does not render a referendum under Section 4C vague. I would ask this court, I realize I'm out of time, so I would ask this court, we can to please refer to the additional arguments we've made in our brief and vacate the preliminary injunction and allow Peoria County to implement the will of the voters and eliminate the auditor's office. Thank you. Thank you. Good morning, Your Honors. Good morning. May it please the court and counsel. I'll try and keep my voice up, but if at any point in time you can't hear me, feel free to just yell at me and let me know. I'm going to do about two and a half things. I was going to do three things, but I'm going to do three things. I'm going to give a little bit of, highlight some of the facts that are particularly relevant to this and the discussion that you all have been having and that I think are important to this. I'm going to briefly address the Tully Doctrine and the implications of Leck and Lipinski, and then I was going to address a couple of cleanup items. However, Justice Zinoff hit the two points I was going to hit, so I'll hit them pretty quickly at the end and obviously interrupt me with any questions. So there are a few facts here. Counsel, not to get you too far off track for your outline, and certainly we appreciate your outline and letting us know where you want to go with your oral argument. But I would like to ask, focusing on Section 4C, what should we make of the language in Article 7, 4C that says, accept this change pursuant to this section, elected officers shall be elected for terms of four years, and then goes on to say, any office may be eliminated and the terms of office and manner of selection changed by countywide referendum. Why doesn't this language mean that the voters can eliminate the office of county auditor at any time, even in the middle of the auditor's term? I am not taking the position, and the plaintiffs did not take the position, that the county may not eliminate the position midterm. However, Leck and Lipinski make clear that if they do that, they need to be very, very clear to the voters that that's what they're doing. And that's the problem. Well, are they not clear when we look at the terms of 4C and 11B, and we also look at the language of the referendum that talked about there being an external auditor in cost savings, etc. Some of the points that the opposing counsel made. Well, I think Justice Steedman hinted at the idea that if they had stopped after shall it be eliminated and had an effective date, that would be clean. And this extraneous information probably is not appropriate in a referendum. We're not there. I don't need to argue that for purposes of today. But I do think it was improper to include that because it influences voters. Here's the problem. The problem is that when you shorten the term, you are creating the mischief that Leck cautioned for. And the mischief could be, for example, and we say this in our brief, if you have a hotly contested political issue. Let's say in this situation, the board was very, very close as to whether to keep the auditor or eliminate the auditor. And let's say that the election results are to eliminate the auditor. So this referendum passes. But control of the board changed and shifted and now control the board went where the party that wanted or the people that wanted to keep the auditor are now in control. So they could effectively pocket this because there's no effective date. That's why Leck and Lipinski say, among other reasons, that's why Leck and Lipinski say these have to have the effect of law. They have to be self-executing. You can't allow for this type of mischief. Well, why is this? I haven't seen any argument really regarding mischief. I hear what you're saying today. But where is the constitutional underpinning for a date being required in this referendum? The right of the voters. Voters elect candidates for terms. They elect officers for terms. So that's where I was going to go to on the Tully Doctrine. Tully Doctrine stands for the proposition that an elected term can't be changed by an ordinance. That's full stop. That's the law in Illinois. Everybody understands it. The legislature can't come in and say the governor is going to appoint all these elected positions effective now and we're going to get rid of all of them. That's what Tully says. Leck and Lipinski apply this Tully Doctrine to referenda. I've got all of Article 7 up. It applies to the use of Article 7 in referenda. And as your Honor pointed out, Section 6F incorporates 4. So there is no distinction as between those as it pertains to, there's no meaningful distinction on Leck and Lipinski being only 6F versus 4C. I have a question on a later case than those two. That's Johnson versus Ames, the Supreme Court decision in 2016, where the Supreme Court seemed to indicate that essentially while including an express date indicating the temporal reach of the referendum, it made the referendum clear, it did not indicate or concluded that the submission did not render the referendum invalid. Notwithstanding any concerns we might have about this referendum, isn't Johnson being the last one of the Supreme Court on this point, binding upon us and doesn't that, in this case, or to put it another way, you can't distinguish Johnson, why don't you lose? Well, Johnson didn't deal with, I don't believe, I don't believe Johnson dealt with whether or not it was self-affecting. And I'll confess, I'm not entirely, I don't have Johnson at my fingertips. So I apologize for that. I'd be happy to address it after I do. But what I would argue is that this case is on all fours with Leck and Lipinski and Johnson did not overturn Leck and Lipinski by any stretch. I mean, Leck and Lipinski are good law. Sorry. How is this case on all fours with Leck and Lipinski when Leck and Lipinski talked about the need for further modification, interpretation, and action being taken in order to implement the referendum. Here, all we have is a ministerial act in order to dismantle the office. How are they on all fours with our fact situation? Well, at least two ways and maybe three. One is this language is susceptible to multiple and varied interpretations. And I was going to explain this, but it's in our facts. We explained that the only, the only allegation and the only evidence that was before the judge in our verified complaint was that when this was presented to the executive committee and when they were discussing the language that did not have a date, they, the executive committee councilman Rob Renault said, I would be, I'm going to vote against this because I feel like it would be better if it was at the same election where we were electing the auditor. And I don't think it's appropriate to have this now and have her serve two more terms or two more years of her term. And then the vice chairman, who's a defendant in this case, Mr. Fennell said, that's right. That's right. She will have two more years on her term. So to Justice Stigman's point, it's not only reasonable, it's not only, you know, contrary to that, to the position that this is logical and common sense that it's immediately eliminated. The only people that we know that interpreted it are the people that enacted it. And they said she would have it for two more years. That is a problem. That's a problem that takes us into the Leck and Lipinski world where they are now acting differently. And they do, you're saying it's a ministerial act. Why not December 30th? Why not next year? Why not give six months to wind down the affairs of the office? I mean, none of that is contained. And that's why on binding referendum, and I want to make a distinction here because counsel referred to the, you know, 20 or so referenda that they reference in their brief. There's a difference between a binding referenda that applies to the nomination or election of a candidate versus an advisory referenda. And those that they have that they cite where there's no date, those are all advisory referenda. They could do something or nothing with them. That's the problem here is that what they're trying to do is effectively use an advisory referenda. Should the county do this? Yeah, they should. That's not binding. That's a binding referenda has to have, it has to be self-affecting. Self-affecting in this case, and I'm not suggesting that in every case it has to have an effective date. There might be instances. That was my question. Is it your position that, and I'll add a binding referendum, a referenda need to explicitly state an effective date in order to be valid? And if so, what is your authority? No, absolutely not. I believe you, I could conjure up if I needed to, I could conjure up a binding referenda that could arguably do this differently. You might argue, Ms. Maynard might argue, if this was a referenda that was on this same ballot as an elected, as an elected position. So like, for example, they cite an attorney general opinion that says, if you eliminate the county coroner position in the same election where the coroner is elected, you have effectively abolished the office such that you don't have to honor his election. That's a different situation. In that situation, I don't know, you know, I don't want to argue what anybody might argue later, but I could, I could see where in that situation you would say, no, no, no, the voters voted to eliminate the office not to elect the auditor or the, you know, the majority of the voters. That's a different situation. And maybe it doesn't need an effective date. But when you, Lech and Lipinski are very clear under the Tully Doctrine, when you eliminate or shorten an elected officials term, you have to be clear about it. And one point that I wanted to make, and this is an important one, when we're talking about, and I'm not accusing them of mischief, I don't want to say that. I want to be clear that Lech talks about the idea that the reason these have to be self-executing is because there's a possibility for mischief. That's what, that's their words, not that, that's where I pulled that. So here's a possibility for mischief. Not saying it happened here, maybe it did, maybe it didn't. If you do it without an effective date, perhaps you have affected the ability of Ms. Thomas to get her, to get her constituents out to say they are trying to eliminate me immediately. That matters. That matters to when you've got the chairman, vice chairman of the board saying publicly, well, yeah, she will have two more years. She'll be here for two more years. And then four days after the election, we get a letter from the vice chairman saying she is gone in two weeks. That is a problem. That's a real problem when you present those facts to the court, as we did here, and the judge says, as we did here, well, why not December 1st? Why not December 30th? Why not in a year? Why not never? So that's why it's important. Okay, so if we, if we look at the language as a whole, and we're looking at whether or not it's vague or ambiguous, when we look at this language, doesn't it give us an indication of when it was to go into effect? Because it says eliminate, and it does not have a reference to any future date, but references the fact that there already is an external auditor. Couldn't that suggest that the referendum is or was to be effective immediately? Isn't that a reasonable interpretation of this language? I would suggest no. I would suggest to you that Rob Renault and James Fennell do not think that's a reasonable interpretation because they said the opposite. And I would suggest to you that at this stage, when we are looking at a preliminary injunction, we've gone a bit far to say, couldn't the evidence show this differently? I don't know. If they came in and showed that 95% of the electorate interpreted it that way, that might very well be, I could be wrong. I'm not capable of divining what voters understood that to mean. What I will tell you is what we said, which is that the law requires these to be precise and self-executing so that respectfully, your honors and I don't have to get into a discussion about what we think voters intended by this. It should be clear what voters intended. And here, the very discussion that we are having demonstrates that it was not. And Leck and Lipinski make very clear that in this ambiguity, and I would suggest, your honor, it is ambiguous. The very fact that we are having a discussion about what we think voters might have intended, the very fact that the two councilmen said the exact opposite of what they did later matters. It really does. If there aren't any other questions, I'll jump to the two points that I wanted to make that Justice Sena touched upon. Your honor made the good point on the legislative history. We're not talking about ambiguity here, and Illinois adheres to the plain meaning rule, and I'm not arguing that it's ambiguous. Council didn't argue that it was ambiguous, and there's been no court finding that it was ambiguous. Two other points, though. I'm sorry, one other point. The legislative history that defendants cherry pick on this and put forth, they're all straw man arguments, as we explained. We're not arguing that counties can't eliminate positions by referendum. They plainly can't. We're not arguing that they can't cut short a position if they make it very clear to voters that they are eliminating that. I don't think I can see an argument where you would say the voters spoke and overrode the prior voters. That I understand. I respect that. That's not the argument we're making. The argument we are making is that they didn't do that here. They didn't follow Leck and Lipinski. And critically important is that they knew they could. We have evidence. We explain this. In 2008, the referendum that they used had a date on it. The referendum that they put forth in 2008 that failed had an effective date on it. In this case, the referendum that they put in the board packet and the one that they sent to the election commissioners, that had an effective date. It had an effective date at the end of my client's term. So they knew that they could, maybe they knew they should include an effective date, but they're clearly, they're aware of this. And that's an important point. We're not arguing that they couldn't do it. We're arguing that they didn't do it. And then Your Honor made the point on section 4C versus section 6F, but I wanted to make sure that I make, Your Honor made the point that 6F incorporates 4C at the end. But if you examine 4C and 6F, and I know Your Honor pointed me to that one language, but I would submit there is nothing in 4C or 6F that is a meaningful distinction to say that Leck and Lipinski would apply only in 6F and that they would somehow use a different interpretation of a referendum. Because the issue is whether or not a referendum, Tully says an ordinance can't shorten the term of an elected official. Leck and Lipinski say a referendum is just like an ordinance can't shorten the term of an elected official. That's what it says. I don't see a distinction in 4C that would say, well, if we were looking at 4C, we'd interpret the word referendum in a different way or we'd apply it differently. And certainly, the defendants have not articulated any legally substantial reason for that. So with that, and if there are no other questions, I would respectfully request that this court uphold the trial court. Oh, I wanted to make one point. Sorry, when you busted me off my outline. There was one other issue. Early in this case, well, not early in this case. Early in counsel's appearance in this case, they asked us if they could renew, if we would agree to them renewing their motion to dismiss and we agreed and they wanted to revise it and we set a briefing schedule. We entered the briefing schedule and the next day, the county introduced the referendum. The significance here, in addition to the timing, is that the defendants then filed a motion to stay. And the significance that I want to make sure the court understands is that that motion to stay, we responded and we raised all of these arguments about Leck, Lipinski, Tully Doctrine, and the defendants made all the arguments that they're making here with the exception of some standing arguments, which are a little new. And the judge rejected them. Only point on that is, I don't want the court to be, I don't want it to be lost or missed that the judge was very, very careful on the application of the law here and very, very knowledgeable of the law. And this was beyond just a expedited hearing. This issue had been argued, vetted enormously prior to the preliminary injunction and temporary restraining order because that motion to stay involved all the same issues and arguments. So with that, I'll stop and I'll request that the court uphold the trial court. Thank you. Thank you, counsel. Just briefly, Judge, a couple of things. One is that with regard to this, the Tully Doctrine, as counsel is calling it, you know, Tully is one case, and it frankly doesn't apply here. Tully related to a law that was being that was being passed that changed an elected positions on a college board to appointed positions. And the reason that the court struck that down is because it took the power away from the voters. And that's exactly what why it doesn't apply here. The power is vested in the voters here with regard to this referendum. Counsel talks about the mischief at possible mischief noted by the Supreme Court and Luckin Lipinski. That simply isn't at play here either. The county board isn't the entity that's making the decision on whether to eliminate the auditor's office. The voters did that. The mischief that the Supreme Court was talking about at play and Luckin Lipinski was related to the fact that those referendum directly related to changes in the election processes. That's not an issue here. And frankly, you know, it ignores the fact, again, that this is this is not a decision by the county board, but a decision by the voters, overwhelmingly. The council repeatedly makes misstatements about the discussions that took place on the county board. We've directed the court to the audio and transcripts of those instances, which frankly don't support his arguments. And this is an issue before the court on as a question of law, not an evidentiary matter. But if the court does give significance to any of those discussions, the discussions are normal discourse in the creation of laws that happen every single day in a legislature and one person's opinion over another doesn't give it more significance. And frankly, if any significance is weighed is the fact that the provision extend in the referendum that council believes was in play at some point, extending the referendum, allowing the auditor to maintain in office through 2024 was removed. And so therefore it was not the intent of the county board to do so. And we look to Johnson, which distinguishes luck and Lipinski and holds that a referendum is not vague, simply because it doesn't contain an effective date. I will note quickly that council for the first time here in arguments is raising the issue of advisory versus binding referendum. Those arguments are waived, much like many of the arguments that were first presented in their response here. And again, emphasize to the court that the referendum is the will of the people by overwhelming vote and Peoria County should not be barred from implementing and being and abiding by the duties, it's obligated constitutionally mandated to uphold and implement the referendum. Thank you. Very good. Thank you. Council will take this matter under advisement and now stands in recess.